# Richmond

JOSEPH A. ALEXANDER V. MIRIAM D. HILL.

January 8, 1940.

Record No. 2121.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*Parrish, Butcher & Parrish, Robert G. Butcher* and *A. N. Heflin,* for the plaintiff in error.

*Russell Keiningham,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Miriam D. Hill, hereinafter called the plaintiff, instituted an action at law against Joseph A. Alexander, hereinafter called the defendant, a dentist practicing in the city of Richmond, for damages which she alleged resulted from his negligence in extracting a number of her teeth and in treating her after the operation. The defendant filed a plea of the general issue and grounds of defense denying the allegations of negligence. At the conclusion of the plaintiff's evidence the defendant demurred thereto, The jury assessed damages in the sum of $300, subject to the demurrer. The trial court overruled the demurrer and entered judgment for the plaintiff. To review that judgment the present writ was granted.

The evidence is quite brief, consisting of the testimony of Mrs. Hill, that of her husband, and that of Dr. Ruth, a dentist likewise practicing in Richmond. As disclosed by the testimony of these witnesses the facts are as follows:

The plaintiff had been suffering with rheumatism or arthritis and upon the advice of her physician consulted Dr. Alexander as to the advisability of removing some of her teeth. After an X-ray examination Dr. Alexander determined that eleven of Mrs. Hill's upper teeth were diseased and should be extracted.

On February 13, 1938, Mrs. Hill came to Dr. Alexander's office, was given a general anaesthetic and the eleven teeth were removed. She was directed to return to her home, to use a warm mouth wash, and to make alternating hot and cold applications to her face.

Shortly after she reached home Dr. Alexander called to see her at the request of her husband. He then removed a piece of tooth or bone which was protruding from her upper jaw. About a week later Mr. Hill again telephoned Dr. Alexander of Mrs. Hill's continued suffering. Dr. Alexander again visited the plaintiff, made an examination of her mouth, and advised the continuation of the mouth wash which he had previously prescribed.

Subsequent to this the plaintiff made one or two calls at Dr. Alexander's office and was finally discharged by him early in March. In the meantime Dr. Alexander had told the plaintiff's husband that he had made a "clean job" of the operation and that no roots had been left in her mouth.

For the fitting of the plate Dr. Alexander referred the plaintiff to Dr. Ruth who was a specialist along that line. After several visits and treatments Dr. Ruth fitted a temporary plate on March 12th. His testimony is that at that time he observed nothing wrong with the plaintiff's gums and mouth to indicate that it was not proper that the plate be installed.

In the latter part of October the plaintiff returned to Dr. Ruth complaining that the plate did not fit. Dr. Ruth made an X-ray examination of her mouth and found fragments of roots in six of the sockets from which Dr. Alexander had extracted the teeth. The removal of these roots necessitated the installation of a new plate.

Shortly thereafter this suit was instituted.

The plaintiff's suit is brought on two theories: First, that the defendant performed the operation in a negligent manner, as the result of which several roots were allowed to remain in the sockets, when with the exercise of due care on his part they should have been discovered and removed; and second, that the defendant, with full knowledge that the fragments of roots remained in the plaintiff's jaw after the operation, negligently failed to disclose this fact to her, thereby subjecting her to the discomfort, annoyance, and expense of the installation of a second plate.

The position of the defendant is that there is no evidence of any negligence on his part, and that there is no evidence that he had knowledge that any fragments remained in her gums after the operation had been performed.

The principles governing the duty and liability of a dentist to his patient are well settled by this court.*

■■ In *United Dentists* v. *Bryan,* 158 Va. 880, 884, 164 S. E. 554, 555, we said: "It seems to be settled that a dentist who holds himself out to the world as such, impliedly represents that he possesses the necessary and proper skill to practice his profession. The degree of care and skill required is the same as that which would be exercised by the ordinarily prudent dentist, in good standing, in his community. He does not guarantee or warrant a cure. He is not required to exercise the highest degree of care and skill known to the profession. A clear statement of the case required of a physician or surgeon, which also includes a dentist, is found in Michie's Digest of Virginia and West Virginia Reports, vol. 8, page 155, where the rule is expressed in this language:

"A physician is not required to exercise the highest degree of skill and diligence possible, in the treatment of an injury, unless he has by special contract agreed to do so. In the absence of such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time."

See also, *Hunter* v. *Burroughs,* 123 Va. 113, 96 S. E. 360; *Fox* v. *Mason,* 139 Va. 667, 124 S. E. 405.

■ Ordinarily the doctrine of *res ipsa loquitur* does not apply in a malpractice suit against a dentist or physician, but negligence must be affirmatively proven. *United Dentists* v. *Bryan, supra* (158 Va. 880, at page 884, 164 S. E. 554) ; *Fox* v. *Mason, supra* (139 Va. 667, at page 672, 124 S. E. 405).

*For cases from other jurisdictions see 69 A. L. R. 1142, note.

■ A bad result or a failure to cure is not in itself alone sufficient to raise an inference or presumption of negligence on the part of the dentist or physician. *Fox* v. *Mason, supra* (139 Va. 667, at pages 671, 672, 124 S. E. 405).

In the instant case when the evidence for the plaintiff is tested in the light of these principles it fails to make out a case against the defendant. There is not the slightest proof that the defendant was guilty of any negligence in the manner in which he performed the operation on the plaintiff or in his treatment of her. There is no evidence that he failed to follow the usual and approved custom and practice of operation and treatment in this case. Nor is there any evidence that an examination of the plaintiff's mouth after the operation would have disclosed the presence of the broken roots in her jaw. Indeed, Dr. Ruth testified that when he examined her mouth at the time of installing the first plate, shortly after the operation, he did not observe anything which indicated that the operation had not been successful.

Neither does the evidence show that an inspection of the extracted teeth would have disclosed that some parts of the roots had been broken off and probably remained in the jaw.

■ It is argued by the plaintiff that an X-ray examination of her mouth after the extractions would have disclosed to Dr. Alexander the broken roots in the jaw. We may assume that this is correct. But there is no evidence whatsoever that it was the usual and approved custom and practice of dentists in Richmond to make an X-ray examination after such an operation. Hence no inference of negligence can be drawn from the failure to make such examination.

■ It is true the evidence shows that the defendant told the plaintiff and her husband that the operation had been a success. But the fact that the defendant was mistaken in this does not, of course, show that the lack of success in the operation was in any way due to his negligence.

In the final analysis, the plaintiff's case is that the defendant undertook to extract several of her teeth, and that

after the operation it was discovered that a number of broken roots had been left in her jaw. But, as we have seen, there is not the slightest evidence that such a bad result was due to the negligence of the defendant. Indeed, for aught the record shows, such a result may be ordinarily incident to this operation.

Finally, there is not the slightest evidence in the record to sustain the contention of the plaintiff that Dr. Alexander knew after the operation that the broken roots were left in her jaw. If he had no knowledge of such a condition he could be under no obligation to disclose it. Nor can it be said that he wrongfully concealed from her a condition of which he had no knowledge.

For the reasons stated it is our opinion that the demurrer to the evidence should have been sustained.

The judgment complained of will be reversed and an order will be entered here sustaining the demurrer to the evidence and entering final judgment for the defendant below.

*Reversed and final judgment.*