# Richmond

## A. R. Butler, Jr. v. W. Carter Greenwood.

December 7, 1942.

Record No. 2583.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

458

The opinion states the case.

*Lowry & Radford,* for the plaintiff in error.

*J. B. Browder* and *Robert G. Butcher,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

A. R. Butler, Jr., the plaintiff in error, was the plaintiff in the trial court, and W. Carter Greenwood, the defendant in error, was the defendant. Mr. Butler was the owner and operator of a number of trucks, tractors and trailers. At the time of the accident with which this case is concerned he was engaged in performing a contract for the delivery of lumber for a large defense plant located and in course of construction at Radford, Virginia. He was hauling this lumber from Eastern Virginia, where his plant is, and on December 26, 1940, three of his trucks went to Radford loaded and were returning empty. Two of them left Radford about three o'clock in the afternoon, traveling east, and *en route* passed through the town of Bedford about six-thirty that evening. One of them was driven by a man named Carr and the other by James J. Tomlin. They were proceeding rather close together until they reached Bedford, where they

encountered a traffic light. The Carr truck was ahead and passed on while the light was green. It turned red, which caught and detained the Tomlin truck, so that thereafter they were between 500 and 700 feet apart. The Tomlin truck had a trailer attached to it, which was 22 feet long and 7½ feet wide. This trailer had dual wheels in the rear but was pivoted to the tractor where the connection was, and by means of this pivot it was free to move from side to side. About two miles east of Bedford the road descended for about a quarter of a mile to what is called Little Otter River. This distance down hill is largely made by a number of curves, to the right and to the left.

Tomlin testified that he was making 30 or 35 miles per hour. At the bottom of the hill the defendant, Greenwood, had just crossed the Little Otter River, or the depression which marks it, traveling west, and was just beginning the ascent when each saw the other when they were about 125 feet apart. Each one said that the other was across the white center line on his wrong side of the road. Greenwood said that when he saw the truck making a curve and it was from a few inches to a foot across the line on his side of the road, he slowed down and turned to the right and went over on the shoulder, his two right wheels being off of the hard surface, and just about the moment that his automobile came to a stop the trailer executed a sort of pincer movement, known as jackknifing, and struck his car almost directly at its front. The automobile was a Ford coach of the 1939 model. It was demolished and subsequently scrapped for junk. Greenwood was knocked unconscious and was taken by a passing motorist to the Bedford hospital, where he remained for three days, when he was taken to Richmond to the Johnston-Willis Hospital. He was unconscious for some four hours after the accident. He was quite severely injured. He was incapacitated for some three months. The doctors thought there might be some permanent impairment.

The tractor did not leave the road but the trailer went around to the right and in some mysterious way left dual tire tracks in the mud on the south side of the roadway and

across it. The top of the cab of the tractor and one corner of the trailer showed slight signs of injury but the owner of the trailer testified that its chassis was bent and that it received other injuries of a major nature, which damaged it very much and which caused him to trade it in at about one-half of its original value.

Tomlin said that he saw Greenwood driving toward him and that he was on his (Tomlin's) side of the road, and that the automobile hit his trailer with such terrific force that the impact picked the trailer up and set it down on the south side of the road and this was so because there were no tracks leading to the tracks which were made by the trailer where it landed. He stated that his tractor never left the hard surface at any time. The thing has something of the flavor of that Philistine tragedy of centuries ago, when David saved the day for the Israelites by slaying the giant with a pebble.

Each party brought suit against the other, which were heard together. The notice of motion in the suit brought by Greenwood was treated as a cross claim. The jury rendered a verdict for Greenwood, and assessed his damages at $5,000.00, which was approved by the court.

Counsel for the defendant tersely but accurately limits the issue to the following statement: "It must be admitted that the recovery of either Greenwood or Butler upon the evidence in this case must be predicated upon the failure of one or the other of these parties to drive on his proper half of the highway. The right to recover must necessarily, under the evidence, turn upon this issue, and this issue alone."

Bearing directly upon this question, and which were probably controlling with the jury, are the undisputed physical facts found in the evidence. Here are some of them. The only tire which was blown out by the impact was the left front one of the Greenwood car. This brought its metal rim in contact with the paved road, and what are called by some of the witnesses "gouge" marks could only have been made that way, and these marks were on Greenwood's side of the roadway just west of where his car came to rest and in line

with it. There were three of them. There was also a mark on the north shoulder some eighteen or twenty feet in length leading directly to the Greenwood car. It is also in evidence that broken glass and parts of the car were found only on Greenwood's side of the road. It is important, too, to bear in mind that the tractor and trailer combined represented what is called in the testimony a "32 foot job"; that it was a heavy and ponderous vehicle going down hill, over short and sharp curves and the two sections of the vehicle were joined by a pivot which was intended to allow play, and the jury was well warranted in the very likely inference that the accident happened as was described by Greenwood.

We have so often adverted recently to the position of the litigant enjoying the favor of a jury's verdict approved by the court that it is unnecessary to repeat it. The evidence upon many points presents a hopeless conflict. The jury has chosen to resolve them in favor of the defendant and we find nothing to justify the overturn of its action.

There are five assignments of errors. We have already in effect disposed of the first, that the verdict was contrary to the law and the evidence. We may add that it is in some degree based upon the fact that while Greenwood was in the Bedford hospital and after he had regained consciousness he was visited by the state traffic officer, Redding, who testified that Greenwood said to him that he did not know how the accident happened and that he asked the witness to tell him about it. Of course this was in conflict with his testimony at the trial and it is urged as a change of front on Greenwood's part, and that he should be subject to its implications. We may say that what Greenwood said to anyone while he was in the hospital is not evidence. At most it could only be treated as a declaration against the interest of the declarant, and that is not before us.

The testimony of the physicians made it clear that it is normal, or certainly not unusual, for one to be confused as to events after a brain concussion and later to have the recollection return.

■ The second alleged error was the admission of testimony by a doctor, not a brain specialist, by a hypothetical question concerning the condition of a patient who was under the care of another doctor.

There is no merit in this contention. Dr. R. D. Butterworth, an orthopedic surgeon of Richmond, Virginia, was permitted to answer a hypothetical question touching the brain condition of Mr. Greenwood at the time he was confused as to incidents of the accident and what would be the usual or natural mental responses to certain conditions. The basis of the assignment is that the doctor is not a specialist or expert in brain treatment and that the patient was not under his care.

This is said in a note appended to the case of *Pridgen* v. *Gibson*, 194 N. C. 289, 139 S. E. 443, 54 A. L. R. 855, 861:

■ "As regards the specific question under annotation, from a survey of the cases set out below, it may be concluded that, by the great weight of authority, a physician or surgeon is not incompetent to testify as an expert, merely because he is not a specialist in the particular branch of his profession involved in the case; although this fact may be considered as affecting the weight of his testimony. With the exception of a few cases under the division that deals with insanity, all the cases cited support this view."

■ The third alleged error was the admission of testimony to prove that the defendant, Greenwood, made claim against the plaintiff for damages by letter before his suit was instituted. In the first place, the thing complained of is quite the usual course and often leads to settlement of differences by amicable adjustment rather than by court action. Surely this is commendable and should be encouraged. We see no error in its admission.

The fourth alleged error was the exclusion of testimony tending to prove the manner in which the Greenwood car was being driven 900 to 1000 feet away from the place of the accident. Specifically, this objection is to the exclusion of testimony to the effect that the witness Carr, at the foot of Little Otter Hill, passed a black Ford car, and it was across

the white center lines on the wrong side of the road, proceeding west at a speed of from 30 to 40 miles per hour. The objection was to the position of the car at the time, not to its speed.

The position of a moving automobile is of necessity so variable that the fact that it is on a particular part of a highway at one time can afford no reliable inference that it occupies the same position at any other time. The meeting of any other vehicle or the passing of the motorist by another, or the presence of any object on the road, animate or inanimate, or the whim or caprice of the motorist himself, or that of another motorist, on the road at the same time, and at the same place, may determine, and frequently does, the position of an automobile at a particular time. We have been pointed to no case and we have found none that has decided the precise point. But Mr. Wigmore, in his work on Evidence, section 437, states the rule, which is this:

"Section 437. (1) Existence, from Prior or Subsequent Existence; General Principle, applied on Sundry Instances (Highways, Machines, Buildings, Railway tracks, etc.). When the existence of an object, condition, quality, or tendency at a given time is in issue, the prior existence of it is in human experience some indication of its probable persistence or continuance at a later period. The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand. That a soap-bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence today will vary according to the nature of the tree and the conditions of life in the region. So far, then, as the interval of time is concerned, no fixed rule can be laid down;

the nature of the thing and the circumstances of the particular case must control."

And again, in Section 382, is the following:

"The prior or the subsequent existence of such a fact is always evidential to show its existence at a time in issue, upon the general experience that such facts involve a human attitude more or less continuous and permanent. The probability of continuance depends much, of course, on the nature of the specific fact and the circumstances of each case; and therefore, in setting a limit of time for the range of the evidence, the discretion of the trial Court should control. * * * * The occasional repudiation of such evidence in some of the above precedents is not to be taken as a negation of the general principle, but only as a determination that in the case in hand the contingencies of change were too many to allow the prior or the subsequent condition of things to be of probative value."

It is seen that Mr. Wigmore and a number of cases decided by state courts of last resort hold that questions of the admissibility of evidence of the speed of an automobile at a particular time, as bearing upon its speed at another time, though on the same journey, rest largely in the discretion of the trial court.

A New Jersey case, *State* v. *Weiner*, 101 N. J. L. (16 Gummere) 46, 127 A. 582, said on a question of the admissibility of evidence in a case very like this: "The ruling of a trial court in a matter of discretion will only be reversed when the facts clearly indicate an abuse of that discretion." We think, therefore, there was no reversible error in the ruling of the trial court on the point involved in the fourth assignment.

The fifth assignment, we think, is without merit. In a number of cases this court has held that it was not error for the court to instruct the jury in the language of the statutes if the violation of such statute in the particular case is a proximate cause of the injuries complained of. A violation of the provisions of the statute quoted in defendant's instruction "B" would certainly fix such negligence upon the

violator as would be the proximate cause of the injuries complained of here. It is the crux of the situation. See *Morris* v. *Dame's Ex'r*, 161 Va. 545, 171 S. E. 662; *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397.

The case has been correctly decided and the judgment of the court is accordingly affirmed.

*Affirmed.*