# Richmond

## THOMAS L. LITTLE v. J. PARKER CROSS, JR.

June 11, 1976.

Record No. 750972.

Present, All the Justices.

*Louis B. Fine* (*Melvin M. Belli* [*Calif.*]; *Fine, Fine, Legum & Fine; Belli, Ashe, Ellison & Choulos* [*Calif.*], on brief), for plaintiff in error.

*Jack B. Russell* (*Richard K. Bennett; Browder, Russell, Little, Morris & Butcher*, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

The appellant, Thomas L. Little, as plaintiff, filed his motion for judgment for damages against the defendant, Dr. J. Parker Cross, Jr.,

for personal injuries allegedly resulting from the defendant's negligence in performing a transcanal labyrinthectomy on the plaintiff. At trial, the trial court sustained defendant's objection to testimony offered by plaintiff's expert witness as to negligence in the operation, but permitted plaintiff to amend his motion for judgment to include an allegation that "defendant was negligent in recommending that the operation in question be performed on Jan. 9, 1968." At the conclusion of all the evidence, the trial court, over objection, struck the plaintiff's evidence and entered summary judgment in favor of the defendant.

By his assignments of error Little challenges the actions of the trial court in limiting the scope of the testimony of plaintiff's expert witness and in refusing to permit the case to go to the jury.

The uncontradicted evidence established that in 1964 Little was referred by his family physician, Dr. H. I. Kruger, to Dr. C. S. Sale, an ear specialist, for correction of mastoiditis and chronic infection of the right ear. Dr. Sale performed a mastoidectomy on Little in 1965, but the infection continued. Little was referred by Dr. Kruger to the defendant, who, in 1966 performed an extended mastoidectomy which successfully removed the cause of infection. The wound appeared to be healing properly, but Little's complaints of pain and dizziness prompted the defendant to perform another operation in May, 1967, in which he removed more tissue and bone from the right ear. After this operation, Little continued to complain of dizziness and loss of balance until, after further observation, defendant recommended a transcanal labyrinthectomy to destroy the balance mechanism of Little's inner ear. During the operation, performed on January 9, 1968, the drill used by defendant slipped into and lacerated the seventh facial nerve which controls the eyelid muscles. Little testified that since the operation he had been unable to blink or shut his right eye, had worn a patch over the eye, and had suffered other adverse effects from the surgery.

At trial plaintiff presented Dr. H. L. Hirsh as an expert witness to establish defendant's negligence. Dr. Hirsh practiced internal medicine in Washington, D. C., taught internal medicine at Howard University College of Medicine, and was certified by the Board of Internal Medicine. He was not licensed to practice in Virginia.

Although Dr. Hirsh first testified that he was familiar with the transcanal labyrinthectomy surgical procedure, he admitted that he had not seen such an operation performed during the preceding ten years. From reading he had learned that surgeons used micro-

scopes in performing these operations, and the evidence was uncontradicted that defendant used a microscope in the Little operation. Subsequently, Dr. Hirsh admitted that he had never seen this type of surgical procedure and had never referred a patient to a specialist for the purpose of having a transcanal labyrinthectomy performed. He also admitted that the only training that he had received in surgery was during three months of his internship in 1942-43, but he testified that, after attending various medical conferences, he had concluded that a national standard of surgical care prevailed, and that there was no difference in standards between Washington and Norfolk. The court sustained defendant's objection to any testimony by Dr. Hirsh as to negligence of defendant in the performance of the operation, but permitted plaintiff to amend his motion for judgment to include the allegation of negligence in recommending the operation.

Dr. Hirsh's competence to testify in support of this allegation was explored out of the presence of the jury. During the course of the inquiry, Dr. Hirsh admitted that from his review of the medical records he could not testify to any negligence on the part of defendant in his performance of the operation. This admission mooted the question of the court's ruling that Dr. Hirsh could not testify before the jury as to such negligence. Any error in this ruling of the court, therefore, was harmless.

Dr. Hirsh, however, was permitted to testify before the jury that, in his opinion, defendant was negligent in his timing of the operation. To support his conclusion that surgery was contraindicated at the time of the operation the witness testified that (1) there had not been an adequate trial of medical treatment; (2) there may have been a significant emotional overlay in Little's concern over his health; (3) the danger of infection was present; (4) previous destruction of anatomical landmarks and structures increased the risk of "some untoward accident which would not have been the surgeon's fault"; and (5) beginning in 1966 there were some places employing ultrasound, a noninvasive technique, in cases such as Little's. Under cross-examination Dr. Hirsh admitted that he had never used ultrasound, and did not know whether this technique had been available in Norfolk in 1968, or whether it was being used in that city at the time of trial. He also conceded that even if the additional nonsurgical treatment had been given, the operation ultimately might have been required.

Dr. Sale, a witness for defendant, and the defendant himself, testi-

fied that ultrasound and other noninvasive techniques were not used in Norfolk or the surrounding area in 1968, and that these techniques were not being used anywhere at that time for this type of labyrinthitis. Dr. Kruger testified that in Norfolk the responsibility for determining the necessity for performing surgery rests with the surgeon, but that defendant kept him fully informed in advance as to the reasons why the several operations performed on plaintiff's ear were required. This witness also expressed the opinion that a physician could not learn the medical standards of other areas merely by attending medical meetings.

In explaining why he sustained the defendant's motion to strike the plaintiff's evidence, the trial court informed the jury that there was no evidence that defendant was negligent, or that he failed to do what any other doctor "practicing this type of medicine would have done in this community", and that the court could not permit the jury to speculate that the defendant was negligent.

■ This case is controlled by *Bly v. Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976). There, we reaffirmed the rule enunciated in *Hunter v. Burroughs*, 123 Va. 113, 96 S.E. 360 (1918), and reiterated in *Fox v. Mason*, 139 Va. 667, 124 S.E. 405 (1924), that the standard of care required of specialists in Virginia is that of other like specialists in good standing, in the same or similar localities. Regard must also be given to the state of development of medical science at the time of the incident in controversy. *Alexander v. Hill*, 174 Va. 248, 252, 6 S.E.2d 661, 663 (1940).

Plaintiff's expert witness, Dr. Hirsh, did not adequately establish his knowledge of the professional standards required of ear specialists in Norfolk in 1968. Dr. Hirsh testified that he knew the professional standards adhered to by ear specialists in Washington, D. C., although he practiced there only as an internist, and that he believed that there was a national standard which applied in Norfolk and elsewhere throughout the country. His testimony showed, however, that he knew nothing about the standards that actually obtained in Norfolk. For example, the uncontradicted evidence established that ultrasound, specifically relied upon by Dr. Hirsh as a noninvasive technique which should have been used by the defendant prior to performing the operation on Little, was not known in the Norfolk area at that time. Hence, Dr. Hirsh was not competent to testify as an expert that defendant negligently failed to comply with professional standards observed by ear specialists in Norfolk, or a similar

community, in 1968, by recommending and performing on the plaintiff at that time the transcanal labyrinthectomy.

Without Dr. Hirsh's testimony there was no evidence to make a jury issue. Expert medical testimony is necessary to establish standards to determine if malpractice occurred. *Morgan* v. *Schlanger*, 374 F.2d 235 (4th Cir. 1967). The medical witnesses proffered by defendant testified that defendant's conduct in deciding to operate complied with the professional standards applicable to the Norfolk area. Evidence adduced from these witnesses established that plaintiff had, in fact, received an adequate medical trial; that plaintiff did not suffer from chronic ear infection; that destruction of the landmarks would not preclude a surgical attempt; and that no noninvasive techniques were available. Therefore, there was no testimony from those learned in the profession that defendant had acted negligently or in an unskilled manner in his timing of the operation. *See Easterling* v. *Walton*, 208 Va. 214, 218, 156 S.E.2d 787, 790 (1967).

Moreover, there was no evidence in this case that the timing of the operation proximately caused or contributed to cause Little's injuries. The proximate cause was the movement of the surgeon's drill, for which Dr. Hirsh could attribute no negligence to the defendant, and which would have been a hazard whenever the operation was performed. To have submitted to the jury the question of negligence in timing the operation would have permitted the jury improperly to return a verdict based entirely upon speculation and conjecture, without evidence to support it.

As we find no reversible error in the rulings of the trial court the judgment order will be affirmed.

*Affirmed.*