Richmond

JAMES A. MAXWELL

v.

ROGER McCAFFREY

March 2, 1979.

Record No. 770768.

Present: All the Justices.

*Robert P. Holmes (Melnick & Holmes,* on briefs), for plaintiff in error.

*Charles F. Geschickter, Jr. (Brault, Lewis, Geschickter & Palmer,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the Court.

The sole issue in this malpractice case is whether the trial court erred in holding plaintiff's proffered expert witness unqualified to testify concerning the standard of care applicable to chiropractic practice in Fairfax County and the northern Virginia area.

James A. Maxwell (plaintiff or Maxwell) instituted this action against Roger McCaffrey (defendant or McCaffrey), a licensed chiropractor, alleging that Maxwell sustained injuries as the result of McCaffrey's negligent treatment of plaintiff on April 24, 1974. Defendant denied the allegations of negligence in his answer and responsive pleading.

At trial, the court refused to accept Dr. Stephen Levin, an orthopedic physician and surgeon, as an expert witness concerning the standard of care exercised by chiropractic practitioners in

Fairfax County and the northern Virginia area. Since plaintiff produced no other expert testimony on this subject, the trial court sustained defendant's motion to strike plaintiff's evidence and entered summary judgment for defendant. We granted a writ of error to this final judgment.

The testimony of the proffered expert, Dr. Levin, reveals that he was graduated as a doctor of medicine and received four years of postdoctoral training in orthopedic surgery, including one year of "intensive study in manipulation". Dr. Levin is a board certified orthopedic surgeon who had been practicing in this field in northern Virginia for ten years. He is a Fellow of the American College of Surgeons, a Fellow of the American College of Orthopedic Surgeons, and a member of the North American Academy of Manipulative Medicine. The latter group, while composed entirely of medical practitioners, includes several persons who were chiropractors before receiving their degrees in medicine.

Dr. Levin testified that, at meetings of the North American Academy of Manipulative Medicine, he had discussed with the former chiropractors, residing mainly in the midwest, the manipulative techniques used by medical practitioners and those used by chiropractic practitioners and found these manipulative techniques to be "either the same or very similar". He also testified he uses manipulative techniques on approximately half of the twenty patients he sees daily in his practice.

While testifying that the manipulative techniques used by medical practitioners and chiropractors are the same or similar, Dr. Levin conceded that each discipline manipulated on a "completely different theory" and that chiropractors "use other modalities" with which he was unfamiliar. Dr. Levin did not know what training and education a candidate must undergo before qualifying for the licensing examination to practice chiropractic in Virginia. He also had no knowledge concerning the requirements for certification and recertification of chiropractic practitioners. While he was aware that most chiropractors in northern Virginia belonged to an organized professional society, the witness testified he had never associated with any of the licensed chiropractors in the area and he had no contact with their professional society. His knowledge of chiropractic practice in the area was largely confined to what his patients had related to him.

When asked if he was familiar with the standard of care exercised by chiropractic practitioners in northern Virginia, Dr. Levin responded:

> "I would have to separate the manipulation end of it from the other ends that they use. They use other modalities that I am not familiar with. I can testify to the manipulative treatments that they use. I am not—I don't follow the theories they use for other treatment, or for that matter, manipulation. . . . I feel I am qualified to say I am familiar with the skill used, when they are using manipulative techniques."

Here, as in the trial court, plaintiff points out that Dr. Levin, in his practice of orthopedic medicine and surgery, and defendant, in his practice of chiropractic, use the same or similar manipulative techniques; thus, he argues, Dr.Levin should have been permitted to testify as an expert witness concerning the standard of care which should be exercised by defendant in performing those manipulations. We do not agree with this contention.

■■■ Whether a witness is qualified to express an opinion as an expert is a question largely within the sound discretion of the trial court. A decision to exclude a proffered expert opinion will be reversed on appeal only when it clearly appears that the witness was qualified. The expressed belief of a witness that he is an expert does not *ipso facto* require his qualification. The facts must show that he possesses sufficient knowledge, skill or experience to make him competent to testify as an expert on the subject matter of the inquiry. *Noll v. Rahal*, 219 Va. 795, 250 S.E.2d 741 (1979).

■■■ Plaintiff's cause of action arose on April 24, 1974, prior to adoption by the 1977 General Assembly of Code §§ 8.01-581.12:1,-581.12:2, mandating a statewide standard of care rule, with exceptions, in malpractice actions against those engaged in the healing arts. Therefore, the standard of care which plaintiff was required to establish to meet his burden of proof was the "same or similar community" standard which had been applied prior to those enactments. *See, Noll v. Rahal, supra.* Recently, in *Bly v. Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976), we explicated that standard, saying:

> "In Virginia, at least since 1918, when we decided *Hunter v. Burroughs, supra*, 123 Va. at 131, 96 S.E. at 366, the standard of due medical care applicable to specialists has been that of

'other like specialists in good standing, in the same or similar localities as defendant.' We reiterated this rule in *Fox* v. *Mason*, 139 Va. 667, 671, 124 S.E. 405, 406 (1924), where we set out the 'same or similar community' standard applicable to physicians and surgeons and then said, '[t]he rule is the same as to specialists'" (footnote omitted).

216 Va. at 652, 222 S.E.2d at 788.

To conform with that standard, defendant was required to use that degree of skill and care which would have been exercised by a reasonably prudent chiropractor practicing in the same (Fairfax County and northern Virginia) or similar community. This was the crucial issue.

The record shows that Dr. Levin, while well qualified in his own field of orthopedic medicine and surgery, did not profess to know the standards of skill and care exercised by chiropractic practitioners in the area. He did not know what training and education were required of practitioners of that discipline. He admitted that chiropractic was based on a "completely different theory" than medicine and that chiropractors "use other modalities" than those employed by physicians practicing orthopedic surgery. While chiropractors and orthopedic practitioners both manipulate parts of the patient's body, the witness did not "follow the theories they [chiropractors] use for other treatment, or for that matter, manipulation." Dr. Levin had no personal or professional association with, or knowledge concerning, chiropractic standards in the area.

In such circumstances, we find that the trial court did not abuse its discretion in holding the witness unqualified to testify as an expert on the issue of the degree of skill and care exercised by a reasonably prudent chiropractor in the area. Therefore, the judgment of the trial court will be affirmed.

*Affirmed.*