# COURTNEY S. IVES

v.

# RAMON N. REDFORD, JR., M.D.

March 2, 1979.

Record No. 770580.

Present: All the Justices.

*Louis W. Kershner* for plaintiff in error.

*Thomas J. Harlan, Jr. (Doumar, Pincus, Knight & Harlan,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the Court.

In this medical malpractice case, the trial court disqualified two expert witnesses proffered by the plaintiff to prove the standard of care applicable to the defendant. Then, for the failure to prove the applicable standard of care, the court struck the plaintiff's evidence and entered summary judgment in favor of the defendant. The sole question presented is whether the court erred in disqualifying the witnesses.

By motion for judgment, the plaintiff, Courtney S. Ives, sought damages from the defendant, Dr. Ramon N. Redford, Jr., for the defendant's alleged negligence (1) in failing to diagnose that the plaintiff had breast cancer, and (2) in prescribing contraindicated medication. The defendant denied the allegations of negligence.

The defendant is a gynecologist practicing in the City of Virginia Beach. For a period of years alleged to extend to November 25,

1975, the plaintiff was under the defendant's care. From time to time during this period, the plaintiff consulted the defendant concerning a condition in her left breast. Although assured by the defendant that the condition was not cancerous, the plaintiff, after consulting another doctor, underwent a radical mastectomy for cancer.

The two witnesses disqualified by the trial court were Dr. Saul Kay, a surgical pathologist connected with the Medical College of Virginia in Richmond, and Dr. Neville Jackson, a surgeon associated with the Veterans Administration Hospital in Hampton. The final order entered by the court states that the witnesses were disqualified because (1) neither was a gynecologist, and (2) neither had ever practiced in the City of Virginia Beach.

In the final order, the trial court indicated that its action in disqualifying the witnesses was required by our decisions in *Bly* v. *Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976), and *Little* v. *Cross*, 217 Va. 71, 225 S.E.2d 387 (1976). Nothing in either case, however, dictates that the standard of care applicable to a gynecologist practicing in a particular locality can be established only by another gynecologist who has practiced in the same locality.

The opinions in both *Bly* and *Little* state the rule that the standard of care applicable to specialists is that of other like specialists in good standing in the same or similar locality. In neither case, however, was there any issue concerning the "like specialists" portion of the rule. In *Bly*, the proffered expert practiced the same general specialty, obstetrics and gynecology, as the defendant, so no issue could have arisen concerning the "like specialists" portion of the rule. In *Little*, the testimony of an internist was proferred against an ear, nose, and throat specialist, but the internist was not disqualified because of this difference in specialties. In each case, the proffered expert was held disqualified for the plaintiff's failure to satisfy the "same or similar locality" portion of the rule.

Since the present case was decided below, we have considered two medical malpractice matters involving questions concerning the qualifications of expert witnesses. In *Noll* v. *Rahal*, 219 Va. 795, 250 S.E.2d 741 (1979), we held that the trial court had not erred in disqualifying a witness proffered by the plaintiff. There, however, a pediatrician was proffered against another pediatrician, so no question concerning the "like specialists" test was involved. In *Maxwell* v. *McCaffrey*, 219 Va. 909, 252 S.E.2d 342 (1979), the trial court had disqualified an orthopedic surgeon who was proffered as

a witness against a chiropractor. We upheld the disqualification, not, however, because the specialty of the witness differed from the defendant's specialty, but because the witness "did not profess to know the standards of skill and care exercised by chiropractic practitioners in the area." 219 Va. at 913, 252 S.E.2d at 345.

None of the foregoing cases, therefore, and no other Virginia decision we have found, indicates that, to establish the standard of care applicable to one practicing a named specialty, only another member of the same specialty is competent. The rule followed generally elsewhere clearly permits a crossover between specialties, with the test of qualification based upon the proposition that it is "the scope of the witness' knowledge and not the artificial classification by title that should govern the threshhold question of admissibility." *Fitzmaurice v. Flynn*, 167 Conn. 609, 618, 356 A.2d 887, 892 (1975). See also *Annot.*, 31 A.L.R.3d 1163 (1970).

Two of our prior decisions do indicate, however, a direction toward alignment with the rule followed generally elsewhere. In *Butler* v. *Greenwood*, 180 Va. 456, 23 S.E.2d 217 (1942), a case involving negligent injury by automobile, testimony by a physician concerning the brain condition of one of the parties litigant was objected to on the ground that the physician was not a specialist or expert in brain treatment. Holding the objection meritless, we said that, "'by the great weight of authority, a physician or surgeon is not incompetent to testify as an expert, merely because he is not a specialist in the particular branch of his profession involved in the case; although this fact may be considered as affecting the weight of his testimony.'" 180 Va. at 462, 23 S.E.2d at 219.

In *Fox* v. *Mason*, 139 Va. 667, 124 S.E. 405 (1924), cited in both *Bly* v. *Rhoads, supra,* and *Little* v. *Cross, supra,* a patient resisted payment of a physician's fee on the ground of the physician's negligent treatment. In the course of the opinion, this is stated:

> "'One who holds himself out as a specialist in the treatment of a *certain organ, injury, or disease* is bound to bring to the aid of one so employing him that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that *particular organ, injury, or disease*, its diagnosis, and its treatment, in the same general locality, having regard to the then state of scientific knowledge.'" 139 Va. at 671, 124 S.E.

at 406 (emphasis added).

It is undisputed in this case that the breast is one of the organs and that breast cancer is one of the diseases concerning which a gynecologist holds himself out as a specialist. It is also unchallenged that Dr. Kay, the surgical pathologist, and Dr. Jackson, the surgeon, proffered by the plaintiff, are experts with respect to the same organ and the same disease. To this extent, at least, Dr. Kay, Dr. Jackson, and the defendant share a commonality in their special knowledge and skill concerning the organ and the disease that are the subjects of the present controversy.

The defendant argues, however, that "there is a vast difference between primary or treating physician, such as [the defendant], and secondary or indeed tertiary specialists [such as Dr. Jackson, the surgeon, and Dr. Kay, the surgical pathologist] who may see a patient [,] after the primary diagnosis has been made [,] for the purpose of final treatment and diagnosis." This "vast difference," the defendant says, is especially pertinent in the diagnosis of breast cancer because the word "diagnosis" has "various meanings to various specialists." From this, the defendant seems to conclude that a surgical pathologist and a surgeon are disqualified from testifying against a gynecologist because the standards of their specialties may differ from and be higher than those of the specialty practiced by the gynecologist and the latter, therefore, would be unfairly judged by a higher standard.

But the question whether a proffered expert witness is qualified to testify against a particular doctor should not turn upon the presence or absence of some difference in their specialties. If the standards of the two specialties are the same, the witness should be qualified. If the standards differ, the witness should be qualified if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to these latter standards. In both situations, the defendant is assured that his conduct will be measured, not by some differing standards of another specialty, but by those of his own.

We hold, therefore, that the trial court erred in disqualifying Doctors Kay and Jackson on the ground that they were not gynecologists. This brings us to the question whether the court also erred in disqualifying the witnesses because they had never practiced medicine in the City of Virginia Beach.

Under the "same or similar locality" rule followed in Virginia, a plaintiff in a medical malpractice case against a

specialist has the burden of establishing the standard of due medical care applicable to like specialists practicing in the same locality where the defendant practices or in a similar locality.* The very nature of the rule, however, precludes a requirement that a proffered expert must have practiced in the same locality as the defendant.

As the rule is written, if a proffered expert witness has not practiced in, or, for some other reason, does not know the standard of, the locality where the defendant practices, the plaintiff may yet qualify the witness by showing that the defendant's locality is similar to one with whose standard the witness is familiar. To adopt the requirement that the proffered witness must have practiced in the same locality where the defendant practices would effectively erase the words "or similar" from the rule and thus disqualify otherwise competent witnesses.

Neither ground assigned in the final order entered by the trial court, therefore, was sufficient, in and of itself, to disqualify Doctors Kay and Jackson. The defendant says, however, that, if we look behind the final order and examine what occurred at the proffer hearing, we will see that the trial court, properly applying the "same or similar locality" rule, was justified in disqualifying the witnesses.

When we examine what occurred at the proffer hearing, however, we find not only that the trial court labored under the misconceptions concerning the "same or similar locality" rule as are contained in the final order but also that the court misconceived the rule in another respect. At one point in the hearing, when the plaintiff was attempting to qualify Dr. Jackson, the trial judge stated that "the only way [Dr. Jackson] can testify is for him to know what the standard was here [in Virginia Beach]." But, as indicated previously herein, a proffered expert need not actually know the standard in the locality where the defendant practices; if the witness knows the standard in a locality that his testimony, or other evidence presented by the plaintiff, shows is similiar to the defendant's locality, then the plaintiff has satisfied the "same or similar locality" test.

---

*At its session, the General Assembly provided a statewide standard of care for medical malpractice cases, except where it is determined that the same or similar locality standard would be more appropriate. Acts 1977, c. 202; Code § 8-923 (now Code § 8.01-581. 12:1). Because her cause of action arose prior to the enactment of this statute, the present plaintiff agrees that the statute is not applicable here.

Further examination of what occurred at the proffer hearing shows that the several misconceptions under which the trial court labored concerning the "same or similar locality" rule so pervaded the entire hearing that the plaintiff was denied a fair opportunity to qualify her proffered experts. For this reason, we will not attempt to assess the qualifications of these witnesses or to decide whether they should have been permitted to testify before the jury. Instead, we will reverse the judgment of the trial court and remand the case to afford the plaintiff an opportunity to qualify her expert witnesses in a manner consistent with the views expressed in this opinion.

*Reversed and remanded.*