## Richmond

### Magnolia Lyons v. Eugene R. Grether

November 23, 1977.

Record No. 760815.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Noel H. Thompson,* for plaintiff in error.

*Joshua N. Fletcher,* for defendant in error.

*Amicus Curiae: National Federation of the Blind Inc., etc., et al. (Amanda R. Ellis; Charles St. Clair Brown [D.C.],* on brief), for plaintiff in error.

POFF, J., delivered the opinion of the Court.

We awarded a writ of error to a final order entered June 2, 1976 sustaining a demurrer to a motion for judgment filed by Magnolia Lyons (plaintiff) against Dr. Eugene R. Grether (defendant).

A demurrer confesses the truth of the facts alleged and accepts all reasonable inferences therefrom. Plaintiff, a blind person, accompanied by her four year old son and her guide dog, arrived at defendant's "medical office" on the morning of October 18, 1975, a Saturday, to keep an appointment "for treatment of a vaginal infection". She was told that defendant would not treat her unless the dog was removed from the waiting room. She insisted that the dog remain because she "was not informed of any steps which would be taken to assure the safety of the guide dog, its care, or availability to her after treatment." Defendant "evicted" plaintiff, her son, and her dog, refused to treat her condition, and failed to assist her in finding other medical attention. By reason of defendant's "wrongful conduct", plaintiff was "humiliated" in the presence of other

patients and her young son, and "for another two days while she sought medical assistance from other sources", her infection became "aggravated" and she endured "great pain and suffering". Alleging that defendant's waiting room "is a public place and a place to which the general public is invited and where she had a right to have her guide dog with her pursuant to Virginia Code § 63.1-171.2 [1] ", plaintiff demanded damages resulting from "breach of his duty to treat".

The order sustaining the demurrer was based upon two grounds. Ruling as matters of law, the trial court held that "the defendant had no duty to treat the plaintiff since he had not accepted her as a patient" and that "defendant's waiting room is not a public facility or place contemplated by" the White Cane Act. We address the first ruling in our determination whether the motion for judgment was sufficient to allege the creation of a physician-patient relationship and a duty to treat. If we determine that it was, then the trial court's second ruling bears upon the question whether defendant's withdrawal from the relationship for the reasons and under the circumstances alleged in plaintiff's motion excused non-performance of the duty to treat.

Although there is some conflict of authority, the courts are in substantial accord upon the rules concerning the creation of a physician-patient relationship and the rights and obligations arising therefrom. In the absence of a statute, a physician has no

---

[1] This statute, part of the "White Cane Act" (Acts 1972, c. 156), reads as follows:

"**§ 63.1-171.2. Rights of blind and physically disabled persons in public places and places of public accommodation.** — (a) The blind, the visually handicapped, and the otherwise physically disabled have the same right as the able-bodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places.

"(b) The blind, the visually handicapped, and the otherwise physically disabled are entitled to full and equal accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor buses, street cars, boats or any other public conveyances or modes of transportation, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons.

"(c) Every totally or partially blind person shall have the right to be accompanied by a dog guide, especially trained for the purpose, in any of the places listed in subsection (b) without being required to pay an extra charge for the dog guide; provided that he shall be liable for any damage done to the premises or facilities by such dog."

legal obligation to accept as a patient everyone who seeks his services. *Findlay* v. *Board of Sup'rs. of County of Mohave*, 72 Ariz. 58, 230 P.2d 526 (1951); *Childers* v. *Frye*, 201 N.C. 42, 158 S.E. 744 (1931); *Hurley* v. *Eddingfield*, 156 Ind. 416, 59 N.E. 1058 (1901). A physician's duty arises only upon the creation of a physician-patient relationship; that relationship springs from a consensual transaction, a contract, express or implied, general or special, *McNamara* v. *Emmons*, 36 Cal.App.2d 199, 204-05, 97 P.2d 503, 507 (1939); and a patient is entitled to damages resulting from a breach of a physician's duty. *See* 61 Am. Jur.2d Physicians, Surgeons, Etc. § 96 (1972); 70 C.J.S. Physicians and Surgeons §§ 37, 38 (1951). Whether a physician-patient relationship is created is a question of fact, turning upon a determination whether the patient entrusted his treatment to the physician and the physician accepted the case. *Parkell* v. *Fitzporter*, 301 Mo. 217, 256 S.W. 239 (1923); *Hansen* v. *Pock*, 57 Mont. 51, 187 P. 282 (1920); *Peterson* v. *Phelps*, 123 Minn. 319, 143 N.W. 793 (1913).

■ We consider first whether the facts stated in the motion for judgment, and the reasonable inferences deducible therefrom, were sufficient to allege the creation of a physician-patient relationship and a duty to treat. Standing alone, plaintiff's allegation that she "had an appointment with defendant" would be insufficient, for it connotes nothing more than that defendant had agreed to see her. But plaintiff alleged further that the appointment she had been given was "for treatment of a·· vaginal infection". The unmistakable implication is that plaintiff had sought and defendant had granted an appointment at a designated time and place for the performance of a specific medical service, one within defendant's professional competence, *viz.*, *treatment* of a particular ailment. It is immaterial that this factual allegation might have been contradicted by evidence at trial. Upon demurrer, the test of the sufficiency of a motion for judgment is whether it states the essential elements of a cause of action, not whether evidence might be adduced to defeat it. *See Grubbs* v. *National Life, & Co.*, 94 Va. 589, 591, 27 S.E. 464, 465 (1897).

We are of opinion that the motion for judgment was sufficient to allege a consensual transaction giving rise to a physician-patient relationship and a duty to perform the service contemplated, and that the trial court erred in holding as a

matter of law that defendant had not accepted plaintiff as a
patient.

We consider next how a physician-patient relationship, once
created, may be lawfully terminated.

 As a general rule, unless the services to be rendered are
conditioned or limited by notice or by the terms of employment,
the physician-patient relationship continues until the services
are no longer needed, *Vann* v. *Harden*, 187 Va. 555, 565, 47
S.E.2d 314, 319 (1948); however, the relationship may be
terminated earlier by mutual consent or by the unilateral action
of the patient; and under certain circumstances, the physician
has a right to withdraw from a case, provided the patient is
afforded a reasonable opportunity to acquire the services he
needs from another physician. *See* Annot., 57 A.L.R. 2d 432, 439,
§ 3 (1958).

 Under plaintiff's construction of the White Cane Act,
defendant's withdrawal from her case was not justified by the
circumstances. She argues that defendant's office was a place "to
which the public is invited" within the meaning of Code
§ 63.1-171.2(b) and that defendant's withdrawal violated the
right to which she was entitled under Code § 63.1-171.2(c).
Under the trial court's construction, defendant's office was not
covered by the Act and plaintiff had no statutory right to take
her dog there.

We are persuaded by plaintiff's argument as applied to the
facts alleged in this case. It fairly appears from the face of the
motion for judgment that defendant's office was a place to which
certain members of the public were invited by prior appointment
to receive certain treatment at certain scheduled hours. Plaintiff
did not allege that defendant's office was a place to which the
general public was generally invited to receive general medical
services. Accordingly, while we hold that, under the facts alleged
here, defendant's office was within the intendment of the White
Cane Act and that the trial court erred in ruling otherwise, we
believe it would be beyond the issues drawn for us to hold as a
matter of law that the Act as presently written covers all
physicians' offices under all circumstances.[2]

---

[2] Nor is it necessary for purposes of this opinion to decide what effect amendments,
adopted since this case arose and addressed to other statutes, may have upon the
White Cane Act. We refer to Acts 1976, c. 596, and Acts 1977, c. 608. Under Code

Even if the trial court had been correct in holding that plaintiff had no statutory right to take her guide dog to defendant's office, the question yet would have remained whether plaintiff's refusal to part with her dog without the assurances she sought constituted a circumstance justifying defendant's withdrawal from her case. Also remaining would have been the other question related to defendant's right to withdraw, *viz.*, whether, as plaintiff expressly alleged, she was denied a reasonable opportunity to acquire the services she needed from another physician. Both questions were questions of fact which, even in the absence of the White Cane Act, were the subjects of proof, and we hold that the trial court erred in sustaining the demurrer.

The judgment is reversed and the case will be remanded with instructions to restore plaintiff's motion for judgment to the docket.

*Reversed and remanded.*

---

§§ 35-42.1 and 36-124 as amended by those Acts, "medical and dental offices" are expressly designated as places of public accommodation to which "it shall be lawful for a blind person accompanied by a guide dog to take such dog."