Patricia **HERNANDEZ** et al., Appellants,

v.

**UNITED STATES of America.**

No. 79–1589.

United States Court of Appeals, District of Columbia Circuit.

Argued June 6, 1980.

Decided Sept. 17, 1980.

---

19. *See* note 6, *supra.*

Robert J. Stanford, Washington, D. C., for appellants. Gale Molovinsky, Washington, D. C., also entered an appearance for appellants.

Christopher A. Myers, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM, ROBINSON and WILKEY, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

The plaintiff in this case brought an action under the Federal Tort Claims Act, Pub.L.No. 79–601, tit. IV, § 401, 60 Stat. 812 (1946) (codified in scattered sections of 28 U.S.C.), alleging medical malpractice by a government physician. After trial, the district court found that the plaintiff had not proved malpractice and entered judgment for the government. Because the court's finding as to the relevant standard of care failed to include an essential element–that the physician be aware of and attempt to resolve the particular complaint presented by the patient–we reverse the decision of the district court and remand the case for further proceedings consistent with this opinion.

I.

In September, 1975, plaintiff Patricia Hernandez discovered a lump in the lower part of her left breast.[1] Being the wife of a serviceman,[2] she scheduled an appointment at the Andrew Rader Clinic at Fort Meyer, Virginia, where she was examined by Dr. Edward G. Koch, a civilian obstetrician–gynecologist. Dr. Koch did not find. a mass, but did note a tenderness in the lower left breast. Because he believed that the tenderness might simply be the result of the plaintiff's approaching menstrual period, he suggested another examination in ten days.

What transpired during this second examination is a matter of dispute. The plaintiff claims that Dr. Koch, faced with a series of routine physical examinations on the morning of the plaintiff's appointment, forgot that he had examined her previously in response to a specific breast complaint and merely gave her a routine physical that happened to include a breast examination. The Government, on the other hand, contends that Dr. Koch was aware of the plain-

---

1. Our recitation of facts is drawn largely from the district court's memorandum opinion. *See Hernandez v. United States*, Civ. No. 78–0829 (D.D.C. Mar. 27, 1979) [hereinafter cited as District Court Opinion], *reprinted in* Appendix (App.) at 112.

2. The dependents of servicemen are eligible for medical care in military facilities. *See* 10 U.S.C. § 1076 (1976 & Supp. II 1978).

tiff's complaint and that he gave her a complete physical in addition to a breast examination only because her medical history indicated she was due for such a procedure. In any event, Dr. Koch determined that the plaintiff's breasts were "okay," and she left the examination confident that the breast problem she had perceived was nonexistent.[3]

Eighteen months later, the plaintiff began to experience a searing pain in her left arm, and she sought the advice of another government physician. It was determined that the plaintiff had cancer, and she was forced to undergo a modified radical masectomy of her left breast. Since the masectomy, she has received further treatment, including chemotherapy, radiation, and a hysterectomy, but the cancer apparently has not been arrested.

The plaintiff filed this action under the Federal Tort Claims Act, alleging that Dr. Koch had negligently failed to diagnose her condition when she presented her breast complaint in 1975, and that this negligence, by causing a delay in her treatment for the cancer, had greatly increased her pain and suffering and had decreased her chances for long–term survival. After a nonjury trial,[4] the district court issued a four–page memorandum opinion containing the court's findings of fact and conclusions of law. *Hernandez v. United States*, Civ. No. 78–0829 (D.D.C. Mar. 27, 1979) (memorandum opinion) [hereinafter cited as District Court Opinion], *reprinted in* Appendix (App.) at 112. On the basis of the expert testimony at trial, the court stated the standard of care by which it would judge Dr. Koch's conduct and then found that the doctor had complied with that standard. Accordingly, the court decided that there had been no malpractice and therefore that the Government was not liable.

## II.

Under Virginia law,[5] the standard of care for a board–certified specialist such as Dr. Koch is based on the reasonable practices of other like specialists in the same or similar localities. *See Little v. Cross*, 217 Va. 71, 74, 225 S.E.2d 387, 390 (1976); *Bly v. Rhoads*, 216 Va. 645, 652, 222 S.E.2d 783, 788 (1976).[6] The determination of this stan-

---

3. Dr. Koch's notes from the second examination, translated from his abbreviations were as follows:

> 38–year–old white female with two live births and two miscarriages. With last menstrual period 9/15/75. Husband with vasectomy. Presents for routine examination. Some history of rectal fissure. Blood pressure–134 over 84. Breasts okay. Pelvic within normal limits–cervical polyp. Rectal examination with anoscope within normal limits. Prescription–treatment with Kenalog Creme.
>
> /s/ E.C. Koch M.D.

*See* District Court Opinion at 2 n.3, *reprinted in* App. at 113 n.3; App. at 34 (copy of actual handwritten notes). These notes appeared at the bottom of the same page of medical records on which the doctor had noted the patient's breast complaint during her first examination. The "treatment with Kenalog Creme" was for a rectal fissure.

Dr. Koch testified that he would have explained the cervical polyp, a common benign growth, by telling the patient she had a growth or mass but it was nothing to be concerned about. Trial Transcript for Feb. 23, 1978 (a. m.), at 37, *reprinted in* App. at 70. The plaintiff contends that she might reasonably have understood this type of explanation to relate to the breast lump she had perceived. *See* Brief for Appellant at 10, 32–34.

4. Cases brought under the Federal Tort Claims Act are tried to the court sitting without a jury. *See* 28 U.S.C. § 2402 (1976).

5. Under the Federal Tort Claims Act, the United States is liable

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1976). *See id.* § 2674. In the case before us, the examination and alleged misdiagnosis occurred at the Andrew Rader Clinic at Fort Meyer, Virginia, and thus the liability of the United States depends on an application of Virginia law.

6. A recent statute changes the standard of care to one that generally is determined on a statewide basis. Va. Code § 8.01–581.12:1 (1977) (current version at *id.* § 8.01–581.20 (Supp.

dard almost invariably depends upon a consideration of expert testimony. *See Hicks v. United States,* 368 F.2d 626, 629–30 (4th Cir. 1966) (applying Virginia law); *Reed v. Church,* 175 Va. 284, 298, 8 S.E.2d 285, 291 (1940).

■ A district court's delineation of the appropriate standard of care, based upon the expert testimony that it has heard, will not be disturbed on appeal unless it is "clearly erroneous." *See* Fed.R.Civ.P. 52(a). As the Supreme Court has observed, "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "Thus, a trial court's finding will not be permitted to stand where it is based on a serious mistake as to the effect of evidence or is clearly contrary to the weight of the evidence." *Daniels v. Hadley Memorial Hospital,* 566 F.2d 749, 757 (D.C. Cir. 1977) (footnotes omitted).

## III.

In its memorandum opinion, based on the expert testimony that it had heard, the district court correctly stated that "[t]he standard of care to which a board certified obstetrician–gynecologist such as Dr. Koch must adhere is that degree of skill and care expected of a reasonably competent practitioner in his specialty acting in the same or similar circumstances." District Court Opinion at 2. The court then set forth what it believed, on the basis of the evidence adduced at the trial, to be the standard of care for cases in which a woman has a specific breast complaint:

[C]ompliance with the standard of care in cases where a woman has a breast complaint requires:

(a) that a history be taken to determine her age, her age at her first pregnancy, the history, if any, of breast cancer in the family, and whether or not she is using birth control pills;

(b) that the examination consist of visual observation of the skin and nipple and manual palpation of the breasts while she is lying down with her arms over her head;

(c) that the doctor, either upon finding or failing to find a lump[,] assess whether further diagnostic procedures or follow–up visits are indicated.

*Id.* at 3–4, *reprinted in* App. at 114. The court concluded that the record did not support a finding that Dr. Koch had failed to comply with this standard, noting that the doctor "testified as to his standard procedure for conducting a routine physical which includes a breast examination," and "[i]t is substantially similar to the procedures outlined above." *Id.* at 4 n.5, *reprinted in* App. at 114 n.5. In making these determinations, the district court necessarily found the standard of care for a routine breast examination, when the woman has no particular breast complaint, to be identical to that for an examination conducted to diagnose a particular breast problem that the patient has experienced. We believe this finding was clearly erroneous.

■ The district court's statement of the standard of care failed to include a crucial element explicit or implicit in the testimony of the experts who appeared at trial: that the physician be aware of and attempt to resolve the particular complaint that the patient has presented. In particular, the examination itself must be geared to the specific complaint of the patient, and the physician must attempt to locate the lump that the patient has experienced. Moreover, as part of his post–examination duties, the physician must determine the need for follow–up procedures based on an

---

1979)). *See Maxwell v. McCaffrey*, 252 S.E.2d 342, 345 (Va.1979); *Ives v. Redford*, 252 S.E.2d 315, 318 n.* (Va.1979); *Noll v. Rahal*, 250 S.E.2d 741, 745–46 (Va.1979). *See generally Robbins v. Footer*, 553 F.2d 123 (D.C. Cir. 1977) (concluding that, under District of Columbia law, nationally certified specialists are to be judged by a national standard of care); Waltz, *The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation*, 18 DePaul L.Rev. 408 (1969).

appraisal of his examination results *and* the patient's stated complaint. *See Lyons v. Grether*, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977).

The expert witnesses produced at trial uniformly testified that when a woman presents a specific breast complaint, a reasonable physician will adhere to the requirements we have stated. Dr. James D. Levy, for example, stated that an examination should focus on the woman's complaint and that if the physician concludes the examination without finding a lump, he should attempt to reach an agreement with the patient that in fact no lump exists; absent such a resolution of the complaint, he should undertake further procedures to continue to search for the lump that the patient has perceived. *See* Trial Transcript for Feb. 22, 1979, at 45–59, 65–83, *reprinted in* App. at 27–36, 38–45. Although the Government relies on the testimony of Dr. R. Robinson Baker, he did not testify to the contrary. In response to a hypothetical question,[7] Dr. Baker stated that a physician would be in compliance with an acceptable standard of care if, *being cognizant of and examining in response to a particular complaint,* the physician performed a thorough examination and, finding no lump, advised the woman to continue to examine her own breasts and to return if the complaint persisted. *See* Trial Transcript for Feb. 26, 1979, at 17–20, 53–55, *reprinted in* App. at 98–100, 108–09. Indeed, Dr. Koch himself testified that he would undertake diagnostic procedures beyond those of a routine examination when he was presented with a specific breast complaint. *See* Trial Transcript for Feb. 23, 1979 (a.m.), at 18–21, 40–42, *reprinted in* App. at 60–61, 71–73; Trial Transcript for Feb. 23, 1979 (p.m.), at 12, 16, 26–27, *reprinted in* App. at 76, 78, 82–83.[8]

## IV.

The district court's determination that Dr. Koch had not engaged in malpractice was fundamentally flawed by the court's erroneous statement of the standard of care that must be followed when examining a woman with a particular breast complaint. Accordingly, the district court's judgment for the Government must be reversed. It is not our function to take the further step of determining whether Dr. Koch, during the second examination, was in fact aware of the plaintiff's complaint and whether he did in fact comply with the standard of care, supported by the evidence adduced at trial, that we have elaborated in this opinion. It is up to the trial judge to determine these factual issues, as well as others that it did not decide due to its conclusions concerning the standard of care and the doctor's compliance therewith.[9] We therefore remand the case to the district court for further proceedings consistent with this opinion.

*It is so ordered.*

---

7. The plaintiff contends that this hypothetical question was never supported by a proper foundation. *See* Brief for Appellant at 17–19; Reply Brief for Appellant at 19–23. The issue of whether Dr. Koch complied with the standard of care articulated in this opinion is one that we remand to the district court for initial determination. *See* part IV, *infra.* Because the propriety of the hypothetical question also depends on an evaluation of the evidence concerning Dr. Koch's compliance with this standard of care, we express no view, pending the district court's analysis, on the merit of the plaintiff's objection to his question. We do, however, expect the district court to give careful consideration to this matter.

8. Even a layman would assume that a physician's procedures would differ depending on whether an examination was routine or instead was in response to a particular complaint.

9. Among the remaining factual disputes are the issue of proximate cause and, if liability is found, a determination of the plaintiff's damages. We leave to the district court's discretion the decision of whether to hold further evidentiary proceedings.