780 P.2d 589 (1989)
116 Idaho 838
Jeremy Tyler EBY, a protected person, By and Through his duly appointed and qualified conservators and guardians, Roberta J. EBY and Darrell G. Eby, parents of Jeremy Tyler Eby; and Roberta J. Eby and Darrell G. Eby, individually, Plaintiffs-Appellants,
v.
L. Raymond NEWCOMBE, Jr., M.D., Defendant-Respondent.
No. 17400.
Supreme Court of Idaho.
September 7, 1989.
Rehearing Denied October 27, 1989.
Webb, Burton, Carlson, Pederson & Webb, Twin Falls, for plaintiffs-appellants. Kenneth L. Pedersen, argued.
Quane, Smith, Howard & Hull, Boise, for defendant-respondent. Richard Stubbs, argued.
BAKES, Chief Justice.
Plaintiffs sued Dr. Newcombe alleging medical malpractice in his diagnosis and handling of plaintiff Jeremy Eby's ailments. The trial court granted defendant's motion for summary judgment finding that the defendant was immune from civil liability under I.C. § 39-1391c. Plaintiffs appeal. We reverse.

I
In early August of 1984, three-year-old Jeremy Eby (Jeremy) became ill and was suffering from vomiting and diarrhea. On *590 August 5, 1984, he showed some improvement; nevertheless, the next day he was taken from his home in Bonners Ferry to his pediatrician, Dr. Piston, in Coeur d'Alene, pursuant to a previous appointment for a routine well-baby checkup. Dr. Piston was also of the opinion that Jeremy was recovering. Later that day, however, after returning home to Bonners Ferry, Jeremy's condition worsened. The next morning, August 7, 1984, Jeremy was quite ill but was still active. By noon, however, he had become listless, unable to walk, and disoriented. Dr. Piston was called and he advised Jeremy's parents to take Jeremy to a local doctor. The Ebys telephoned several doctors in Bonners Ferry, but none were found to be in their offices. Mr. Eby then called the Boundary County Community Hospital in Bonners Ferry and was told that the defendant, Dr. Newcombe, was believed to be the only physician available in town. Mr. Eby then called Dr. Newcombe's office and was advised that the doctor would see Jeremy, even though Dr. Newcombe's practice focused on adults and internal medicine. Dr. Newcombe examined Jeremy briefly at his office while he questioned the Ebys about Jeremy's condition over the past few days. Dr. Newcombe found Jeremy to be profoundly dehydrated, and, believing that a pediatrician would be more appropriately experienced and qualified to treat Jeremy's condition, Dr. Newcombe instructed the Ebys to immediately take Jeremy to be seen by the closest pediatrician, Dr. Weber, at the Bonner County General Hospital in Sandpoint, Idaho, approximately 40 miles away. As Dr. Newcombe stated in his deposition, and as plaintiffs' counsel conceded at the hearing before this Court, Dr. Newcombe did not render any treatment to Jeremy. Rather, he examined Jeremy to ascertain the seriousness of his condition, referred the parents to Dr. Weber, a pediatrician, and called ahead to make sure Dr. Weber would be immediately available upon the Ebys' arrival at Sandpoint. The Ebys then departed and made the 45-minute drive to Sandpoint. There Dr. Weber examined Jeremy and found that he had slipped into a coma. Jeremy's comatose state continued for a period of 17 days. When he recovered consciousness, he was found to be severely brain damaged and remains so at this time.
Plaintiffs filed their complaint alleging that Dr. Newcombe was grossly negligent in failing to properly diagnose Jeremy's condition and in failing to advise Jeremy's parents regarding the treatment necessary for Jeremy's advanced stages of hypovolemic shock. Dr. Newcombe answered and moved for summary judgment arguing, inter alia, (1) that I.C. § 39-1391c relieved him from any liability in this situation, and (2) that plaintiffs' case failed to meet the requirements of I.C. §§ 6-1012 and 6-1013.
The trial court, while recognizing that "there appears to be a disputed issue of fact as to the exact nature of the relationship between Defendant and Jeremy, i.e., was it an emergency situation or a regular patient-and-doctor relationship?", and while further recognizing that "[i]n any event, it appears that a critical question of fact is whether or not Jeremy was in a state of shock when seen by Defendant," nevertheless concluded that defendant's motion for summary judgment should be granted because Dr. Newcombe was granted "immunity" by the provisions of I.C. § 39-1391c. Accordingly, on March 1, 1988, the trial court entered an order and judgment in favor of defendant. Plaintiffs appeal.

II
The determinative issue on appeal is the effect of I.C. § 39-1391c on the factual scenario related above. I.C. § 39-1391c reads as follows:
39-1391c. Physician deemed qualified to furnish emergency treatment  Liability  Physician not required to furnish treatment.  Any licensed physician and surgeon shall be conclusively presumed to be qualified to undertake and to furnish any emergency medical or surgical care and treatment, regardless of the specialty training or skills which might otherwise be preferred for care and treatment of the particular patient, whenever, in the good faith judgment of such physician and surgeon, the condition *591 and best interests of the patient require such physician and surgeon to undertake such care and treatment, and, in the absence of gross negligence under the existing circumstances, no physician so proceeding nor any hospital where such care and treatment is provided shall be held liable in any civil action arising out of the furnishing of such emergency care and treatment.
Nothing in this act shall be deemed to require any physician to undertake to or to furnish medical care and treatment, whether on an emergency basis or otherwise, to any person requesting or presented for such care and treatment, nor shall any such physician be held liable in any civil action by reason of his refraining from the furnishing of such care and treatment or referring the same to a specialist or other physician believed by him to be more uniquely or appropriately experienced and qualified. Neither shall any physician responding to any request for emergency care be held liable in any civil action by reason of failure to so respond with any greater promptness than may be reasonably required or expected, under the existing circumstances, of physicians and surgeons practicing in the particular community where such care and treatment is to be furnished.
In order to encourage doctors of all specialties and trainings to render emergency medical care and first aid services I.C. § 39-1391c was enacted. I.C. § 39-1391c, however, applies only to emergency or first aid situations. It does not apply when an ordinary physician/patient relationship has been established. As the title to the Act as enacted by the legislature states, the Act was meant to provide "that a physician rendering emergency treatment or first aid services shall not be subject to liability therefor in the absence of gross negligence." 1973 Idaho Sess. Laws ch. 82, p. 131. Thus, whether I.C. § 39-1391c applies depends on whether Dr. Newcombe was rendering emergency treatment or first aid services to Jeremy, or whether he was seeing Jeremy under an ordinary doctor/patient relationship. This determination, in the first instance, involves a question of fact. See, e.g., Willoughby v. Kenneth W. Wilkins, M.D., P.A., 65 N.C. App. 626, 310 S.E.2d 90 (1983) (in view of the evidence that emergency room physician at county hospital evaluated plaintiff's physical condition and rendered medical advice to her, and in view of physician's testimony that he did not accept plaintiff as a patient, it was for the jury to determine whether a physician/patient relationship had been established); Easter v. Lexington Memorial Hospital, Inc., 303 N.C. 303, 278 S.E.2d 253, 255 (1981) (whether a physician/patient relationship existed "raises an issue of material fact to be decided by a jury"; trial court's grant of doctor's motion for summary judgment was reversed and remanded); Lyons v. Grether, 218 Va. 630, 239 S.E.2d 103, 105 (1977) ("Whether a physician-patient relationship is created is a question of fact, turning upon a determination whether the patient entrusted his treatment to the physician and the physician accepted the case.").
The district court, in ruling on defendant's motion for summary judgment, acknowledged that "there appears to be a disputed issue of fact as to the exact nature of the relationship between Defendant and Jeremy, i.e., was it an emergency situation or a regular patient-and-doctor relationship?" Nevertheless, the district court granted Dr. Newcombe "immunity" because the second paragraph of I.C. § 39-1391c states that no physician shall be held liable in any civil action because he refrained from furnishing care and treatment "on an emergency basis or otherwise." In short, the district court concluded that I.C. § 39-1391c granted Dr. Newcombe "immunity," regardless of whether Dr. Newcombe's treatment was on an emergency/first aid basis, or whether it was "otherwise," i.e., as part of an ordinary doctor/patient relationship. He stated that I.C. § 39-1391c's "grant of immunity would seem to apply in this case whether Jeremy was seen by Defendant as an emergency patient or as a regular patient because of the legislative phrase `whether on an emergency basis or otherwise'."
*592 An overall reading of I.C. § 39-1391c, however, convinces this Court that by enacting that statute the legislature was simply trying to encourage doctors of all specialties and trainings to render emergency medical care and first aid services; it was not attempting to affect or change the standard of care or liability of physicians in the ordinary doctor/patient relationship, which is governed by I.C. §§ 6-1012 to 6-1013. Viewing the statute as a whole, it is apparent that the legislature was dealing with emergency medical care and first aid treatment. The only time the legislature's intent and meaning becomes unclear is when one focuses on the phrase in the second paragraph which reads, "whether on an emergency basis or otherwise." Where the meaning of a statute is unclear, this Court has already held that resort may be had to the legislative titles and statutory headings as an aid in ascertaining legislative intent. As stated in Walker v. Nationwide Fin. Corp. of Idaho, 102 Idaho 266, 268, 629 P.2d 662, 664 (1981):
It is well established that statutes should be interpreted to mean what the legislature intended them to mean, Gavica v. Hanson, 101 Idaho 58, 608 P.2d 861 (1980); Smith v. Department of Employment, 100 Idaho 520, 602 P.2d 18 (1979); Local 1494 of the International Association of Firefighters, 99 Idaho 630, 586 P.2d 1346 (1978), but where the meaning of a statute is unclear, resort may be had to the statutory heading as an aid in ascertaining legislative intent, State v. Murphy, 94 Idaho 849, 499 P.2d 548 (1972); State v. Mead, 61 Idaho 449, 102 P.2d 915 (1940).
(Emphasis added.) Here, the legislature denominated present I.C. § 39-1391c as part of "an act ... providing that a physician rendering emergency treatment or first aid services shall not be subject to liability therefor in the absence of gross negligence." 1973 Idaho Sess. Laws ch. 82, p. 131. Thus, it appears that the legislature meant for the phrase "or otherwise" to refer to the "first aid services" referenced in the heading to the 1973 Act. There is no indication that the legislature intended for "or otherwise" to refer to treatment rendered under an ordinary doctor/patient relationship. This interpretation of I.C. § 39-1391c comports with the rest of 1973 Idaho Session Laws ch. 82, now codified at I.C. § 39-1391, § 39-1391a and § 39-1391b, wherein similar protection is given to hospitals rendering emergency treatment or first aid services.
Since it is incumbent upon this Court to give the statute an interpretation that will not effectively nullify it, Walker v. Nationwide Fin. Corp. of Idaho, 102 Idaho 266, 629 P.2d 662 (1981); Magnuson v. Idaho State Tax Comm'n, 97 Idaho 917, 556 P.2d 1197 (1976), and since it is not to be presumed that the legislature performed an idle act of enacting a superfluous statute, Walker v. Nationwide Fin. Corp. of Idaho, 102 Idaho 266, 629 P.2d 662 (1981); Richardson v. State Tax Comm'n, 100 Idaho 705, 604 P.2d 719 (1979), we are of the opinion that the legislature intended, as specifically evidenced in the heading to its Act preceding present I.C. § 39-1391c, that the "or otherwise" language of the second paragraph of I.C. § 39-1391c refers to the "first aid services" referenced in the heading the legislature put on Section 4 of 1973 Idaho Session Laws ch. 82 and the other sections of that Act, not to the ordinary doctor/patient relationship which is governed by I.C. §§ 6-1012 to 6-1013.
It is axiomatic that summary judgment should be granted only if no genuine issue as to any material fact is found to exist after the pleadings, depositions, admissions, and affidavits have been construed in a light most favorable to the party opposing the summary judgment. The moving party must be entitled to a judgment as a matter of law. I.R.C.P. 56(c); Sparks v. St. Luke's Regional Medical Center, Ltd., 115 Idaho 505, 768 P.2d 768 (1988); Doe v. Durtschi, 110 Idaho 466, 716 P.2d 1238 (1986). Here, as the trial court recognized, the pleadings, depositions, and affidavits show that there was a genuine issue of material fact as to whether Dr. Newcombe saw Jeremy as part of an ordinary doctor/patient relationship, or whether he simply rendered Jeremy emergency *593 treatment or first aid services. Dr. Newcombe's own affidavit and deposition, in fact, demonstrate this material issue of fact. On one hand, Dr. Newcombe's affidavit states that he saw Jeremy "as, and in the capacity of, the emergency on-call physician for Boundary County Community Hospital." On the other hand, however, in his deposition Dr. Newcombe states: (1) that Jeremy was granted an appointment to see Dr. Newcombe in Dr. Newcombe's office; (2) that he obtained a medical history from Jeremy's parents, observed Jeremy's overall condition, and listened to Jeremy's heart rate; (3) that Dr. Newcombe examined Jeremy for "probably ten minutes," including a very close look at both upper extremities, and a glance at both legs, to determine whether Jeremy had a vein Dr. Newcombe could get an I.V. needle into; (4) that he diagnosed Jeremy as being profoundly dehydrated and in need of I.V.'s; and (5) that he advised the Ebys regarding further action to be taken in Jeremy's treatment. This and other evidence raises an issue of fact regarding the existence of a physician/patient relationship. See Willoughby v. Kenneth W. Wilkins, M.D., P.A., 65 N.C. App. 626, 310 S.E.2d 90 (1983) (a doctor's checking of plaintiff's ears, eyes, throat, and chest, and the doctor's advice regarding further treatment  i.e., see another doctor as soon as possible, go home and go to bed, and drink a lot of water  was enough to allow a jury to find a physician/patient relationship); Lyons v. Grether, 218 Va. 630, 239 S.E.2d 103 (1977) (plaintiff's appointment with defendant doctor for treatment of a specified condition was sufficient evidence of a physician/patient relationship to preclude summary judgment on that issue).
The pleadings, depositions, admissions and affidavits before the trial court in this case show that there was a genuine issue as to the material fact of whether Dr. Newcombe saw Jeremy pursuant to an ordinary physician/patient relationship or whether he only rendered emergency treatment or first aid services to Jeremy, thereby implicating I.C. § 39-1391c. A material issue of fact existing, the trial court erred in granting defendant's motion for summary judgment. Accordingly, the trial court's order and judgment in favor of defendant, filed March 1, 1988, is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
Costs to appellants. No attorney fees allowed.
BISTLINE and JOHNSON, JJ., concur.
SHEPARD and HUNTLEY, JJ., sat but did not participate.