Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Poff, Senior Justice

JANIE MAE BENJAMIN, ADMINISTRATOR
OF THE ESTATE OF YUKEMA DENISE
BENJAMIN, DECEASED

v.     Record No. 962261     OPINION BY JUSTICE ELIZABETH B. LACY
                                     October 31, 1997
UNIVERSITY INTERNAL MEDICINE
FOUNDATION, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Eighteen-year-old Yukema Denise Benjamin went to the Emergency Room at the Medical College of Virginia (MCV) Hospital on October 25 and 28, 1994, complaining of headaches and neck pain. On both occasions, Yukema was directed to the Hospital's Episodic Care Clinic (ECC) and, after examination, was discharged with prescriptions for medication to treat her headaches. On October 31, 1994, Yukema died from the effects of intracranial pressure due to failure of a fluid shunt which had been placed in her head as an infant.

Janie Mae Benjamin, administrator of Yukema's estate, filed a motion for judgment against Julie Ann Samuels, M.D., the medical director of the ECC, and University Internal Medicine Foundation (UIMF). The motion for judgment alleged that when Yukema was treated, Dr. Samuels, as the medical director of the ECC, was in charge of, and responsible for, the physicians in the unit and was acting as the agent, servant, and employee of UIMF.

Dr. Samuels filed a plea of sovereign immunity. Following an evidentiary hearing on the plea, the trial court issued an

opinion letter deciding that Dr. Samuels was acting as an administrator of a state-run public health facility and, applying the four-prong test enunciated in Messina v. Burden, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984), was entitled to sovereign immunity.

UIMF then filed a motion for summary judgment based on the trial court's determination in its opinion letter that Dr. Samuels was acting "for the state as an administrator" of the ECC. This determination, UIMF asserted, eliminated any basis upon which UIMF could be vicariously liable because Dr. Samuels was not acting as an agent, servant, or employee of UIMF at the time of Yukema's treatment in the ECC. After hearing argument of counsel on the summary judgment motion, the trial court entered a final order sustaining Dr. Samuels' plea of sovereign immunity and UIMF's motion for summary judgment. Benjamin filed an appeal challenging both the grant of sovereign immunity with respect to Dr. Samuels and the entry of summary judgment in favor of UIMF.

I.

SOVEREIGN IMMUNITY

Sovereign immunity determinations must be made on a case by case basis, balancing factors identified in a test established in James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980), and further enunciated in Messina, 228 Va. at 313,

321 S.E.2d at 663.[1]  We have previously held that administrators of state-run institutions are entitled to sovereign immunity for actions taken in their administrative capacities because the state has a substantial interest in the efficient management of its entities and facilities, and administrators must exercise discretion in the performance of those duties.  Id. at 310-11, 321 S.E.2d at 662; Banks v. Sellers, 224 Va. 168, 173, 294 S.E.2d 862, 865 (1982); Lawhorne v. Harlan, 214 Va. 405, 407, 200 S.E.2d 569, 571-72 (1973).  The trial court reached the same conclusion in this case.  Applying the Messina test, the trial court determined that the ECC is a state-run facility, that there is "a heavy state interest and involvement" in its administration, and that the administrator of the ECC is required to exercise "a considerable amount of judgment and discretion."  The trial court sustained Dr. Samuels' sovereign immunity plea because, during the events in question, she was acting as the administrative director for the ECC rather than as an attending medical staff member of MCV Hospital to whom the physicians in the ECC were responsible and accountable.

Benjamin assigns error to the trial court's factual
_____
[1] The four factors of the test are:  (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.  Messina, 228 Va. at 313, 321 S.E.2d at 663.

determination that Dr. Samuels was acting as an administrative director of the ECC. In reviewing this determination, we will not disturb the trial court's findings unless they are plainly wrong or without evidence to support them. Code § 8.01-680; Norfolk Airport Authority v. Nordwall, 246 Va. 391, 393, 436 S.E.2d 436, 437 (1993).

The testimony established that Dr. Samuels was a physician, board-certified in internal medicine, and a full-time faculty member with an appointment as an Assistant Professor at MCV. In 1991, she was asked to assume the position of medical director of the ECC in addition to her teaching responsibilities. She received $35,000 annually for her work as medical director. These funds came from the state.[2]

Dr. Samuels' duties as medical director included arranging for physician coverage of the ECC, responding to complaints with respect to the operation of the ECC, and reviewing patient charts in connection with the administrative management of the ECC. She did not hire or fire the physicians or any other personnel in the ECC and was not designated as an attending or admitting physician for ECC patients. There was no requirement that Dr. Samuels approve or be consulted about treatment decisions for the patients in the ECC. The ECC was not part of

[2] This amount was included in MCV Hospital's budget, but it was delivered to Dr. Samuels as part of the compensation she received from the Department of Internal Medicine.

any training program or residency rotation for medical students at MCV. Thus, even though the title "medical director" implies responsibility for the medical care of patients, the record supports the trial court's determination that Dr. Samuels, as medical director of the ECC, performed administrative functions for the state in the operation of the ECC and was not performing the duties of an attending physician in that capacity.

Accordingly, we will affirm the trial court's determination that Dr. Samuels was an administrative agent for a state institution, exercising substantial discretion in carrying out her administrative duties, and was, therefore, entitled to sovereign immunity.[3]

II.

SUMMARY JUDGMENT

Benjamin also assigns error to the entry of summary judgment in favor of UIMF, arguing that whether Dr. Samuels was UIMF's agent in the operation of the ECC was a material fact in issue and, therefore, summary judgment was inappropriate. We disagree.

Resolution of Benjamin's challenge to the summary judgment

---

[3] We do not address Benjamin's argument that the trial court erred in finding that no doctor-patient relationship existed between Dr. Samuels and Yukema because that argument is also based on Benjamin's theory that Dr. Samuels was acting in the capacity of an attending physician, like Dr. Hakala in James and Dr. Bourgeois in Lee v. Bourgeois, 252 Va. 328, 477 S.E.2d 495 (1996).

order requires a review of the procedural development of the case. An evidentiary hearing was held on the sovereign immunity plea. At that hearing, ore tenus testimony was presented by both Dr. Samuels and Benjamin. Benjamin also introduced deposition testimony. Dr. Samuels produced evidence showing that UIMF is a private, non-profit corporation, tax exempt under § 501(c)(3) of the Internal Revenue Code and organized for the private practice of medicine by faculty in the Internal Medicine Department of the Medical College of Virginia. The members of the corporation are those physicians on the faculty of the Department who also engage in private practice. UIMF bills the private patients of members for services received and pays the members for services they render to the private patients. Dr. Samuels was a member of UIMF and was paid for her services to private patients by UIMF. This payment was separate from the compensation she received from the Department.

The evidence also established that the ECC is a non-acute care facility maintained by MCV Hospital for the treatment of non-emergency, walk-in patients, many of whom are indigent. In 1994, the ECC was staffed by two full-time physicians and by physicians who worked in the ECC at night or on weekends, generally referred to as "moonlighting" physicians. Moonlighting physicians were paid directly by the Hospital.

John C. Girtman, III, Executive Director of UIMF,

testified that UIMF receives no benefit from Dr. Samuels' service as medical director of the ECC, does not bill for patients seen in the ECC, receives no financial benefit from the ECC, and is not involved in any way in the daily operation of the ECC.

Benjamin introduced two letters which she argued contradicted this evidence and supported the conclusion that Dr. Samuels was acting as an agent for UIMF, not for the state, in her capacity as medical director of the ECC. Both letters were written by a Hospital administrator to Girtman. The first letter, dated April 8, 1992, stated that two full-time physician positions in the ECC "will be set up and recruited for by U.I.M.F." and stated that the positions were being "created through UIMF." The second, dated January 29, 1993, recited "commitments" of the Hospital for staffing and direction of the ECC: $35,000 annual salary support for the medical director of the ECC, a sum of $125,000 annually for salaries for two full-time physicians in the ECC, and the continuation of hourly pay for the moonlighting "senior residents, fellows and attendings" who worked in the ECC at nights and on weekends. The letter went on to state that billing for the medical director position and full-time positions would be "through memo to me," but the moonlighting physicians would be paid directly at the hourly rate.

Girtman testified that, although these letters were

7

written to him in his capacity as the executive director of UIMF, he was negotiating on behalf of the Internal Medicine Department to insure that sufficient funds were budgeted for the positions.

After considering this evidence and argument of counsel, the trial court resolved any conflicts in the evidence in favor of Dr. Samuels and found that Dr. Samuels was acting in an administrative capacity as the medical director of a state-run medical facility, the ECC. This determination was made in a June 4, 1996 opinion letter. Six days later, UIMF filed its motion for summary judgment, asserting that this determination eliminated any factual dispute regarding whether Dr. Samuels was the agent, servant, or employee of UIMF while acting as the medical director of the ECC. Thus, UIMF concluded, there was no basis for imposing vicarious liability on UIMF for Dr. Samuels' actions.

At the hearing on the motion for summary judgment, the trial court read portions of Girtman's _ore tenus_ testimony from the evidentiary hearing on the sovereign immunity plea concerning the lack of UIMF's involvement, financially or otherwise, in the "operations, upkeep or fundings of the ECC." The trial court specifically asked Benjamin's counsel if he had any evidence to "counter" Girtman's testimony. Benjamin's counsel did not identify any such evidence, but argued only that he was not prepared to put on evidence that day. The

8

trial court subsequently entered the order sustaining UIMF's motion for summary judgment.

Under these circumstances, we conclude that the trial court did not err in entering summary judgment in favor of UIMF. It is true that, during the consideration of the sovereign immunity plea, no issue or finding specifically addressed whether an agency relationship existed between Dr. Samuels acting as medical director of the ECC and UIMF. Nevertheless, one of the theories offered by Benjamin to defeat the sovereign immunity plea was that UIMF was directly involved in the ECC by setting up the ECC, recruiting physicians for the ECC, and billing MCV Hospital for the physician and medical director positions in the ECC. The letters written by the Hospital administrator to Girtman were introduced to support this theory. Benjamin's counsel also argued that a contract existed between the Hospital and UIMF relating to the payment of Dr. Samuels' salary as medical director. The trial court's determination that Dr. Samuels was acting for the state in administering the ECC and that the ECC was a state-run health facility necessarily rejected Benjamin's theory, evidence, and argument that UIMF had a connection or contract with the ECC or with Dr. Samuels, as medical director of the ECC. While Benjamin may not have agreed, she was not entitled to a relitigation of that determination, especially given her inability to suggest additional evidence that could place a

material fact in dispute.[4]

Accordingly, for the reasons cited above, we will affirm the judgment of the trial court.

Affirmed.

---

[4] Benjamin also assigned as error the use of the depositions she introduced in the sovereign immunity hearing to decide the motion for summary judgment, absent her agreement. Rule 3:18. The _ore_ _tenus_ evidence cited above, however, supports the trial court's conclusions and there is nothing in the record to indicate the trial court used the depositions in deciding the summary judgment motion. Therefore, this assignment of error is without merit.