**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CONSUMER HEALTH FOUNDATION,
formerly known as Group Health
Association, Incorporated,
<u>Plaintiff-Appellant,</u>

v.                                                                              No. 97-2550

POTOMAC HOSPITAL,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis III, District Judge.
(CA-97-72-A)

Argued: October 27, 1998

Decided: January 15, 1999

Before WILKINSON, Chief Judge, and ERVIN and
WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Patrick Gleason, Jr., GLEASON, FLYNN &
EMIG, CHARTERED, Rockville, Maryland, for Appellant. Judith
Bowles Henry, CREWS & HANCOCK, P.L.C., Richmond, Virginia,
for Appellee. **ON BRIEF:** Byron J. Mitchell, GLEASON, FLYNN &
EMIG, CHARTERED, Rockville, Maryland, for Appellant. Richard

L. Nagle, Robin M. Vogel, CREWS & HANCOCK, P.L.C., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Consumer Health Foundation (CHF)[1] appeals an order of the district court granting judgment as a matter of law to Potomac Hospital (Potomac) on CHF's contribution action. See Fed. R. Civ. P. 50. Finding no error, we affirm.

I.

On May 22, 1993, Gerald Helmann was shopping at a mall in Woodbridge, Virginia when he began experiencing tightness in his chest and pain in his left arm. Helmann drove to the emergency room at Potomac. Upon his arrival, he proceeded to the front reception desk and signed in. After explaining his symptoms to the registrar and a triage nurse, Helmann asked whether the cost of his treatment would be covered by his insurance carrier, CHF. The registrar told him that Potomac would treat him irrespective of his coverage, but advised him to contact CHF to ensure that it would pay the cost of his treatment at Potomac.

When Helmann contacted CHF, he was informed that the cost of his treatment by Potomac would not be covered and that the closest hospital where Helmann's treatment costs would be authorized was

_____

[1] During the course of some of the events that are the subject of the present appeal, CHF was known as Group Health Association, Inc. For ease of reference, we refer to Appellant as "CHF" throughout the opinion.

2

CHF's Annadale, Virginia facility. After that conversation, Helmann returned to the reception desk, told the registrar and triage nurse that CHF had not authorized his treatment at Potomac, and left the emergency room. En route to CHF's Annadale facility, Helmann collapsed in his automobile from a heart attack. He died three days later.

Sharon Helmann, personal representative for Helmann's estate (the Estate), settled an action against CHF for $1.25 million. CHF subsequently filed this action against Potomac for contribution, alleging that Potomac breached its duty to provide Helmann with reasonable care. After trial, a jury returned a verdict in favor of CHF. The district court set the verdict aside, however, and entered judgment as a matter of law against CHF. The district court ruled (1) that no hospital-patient relationship ever was formed between Helmann and Potomac and therefore that Potomac had no duty to care for Helmann; (2) that if a hospital-patient relationship was formed, Helmann unilaterally ended it; and (3) that the breach of the standard of care alleged by CHF did not proximately cause any of the Estate's damages.

II.

In order for a settling party to obtain contribution from a joint tortfeasor, the injured person must possess a cause of action against the joint tortfeasor. See Nationwide Mut. Ins. Co. v. Jewel Tea Co., 118 S.E.2d 646, 648 (Va. 1961). To establish a negligence cause of action, an injured party must establish that damages resulted from the defendant's breach of a legal duty. See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy, 365 S.E.2d 751, 754 (Va. 1988). The duty of a hospital to treat arises only upon the creation of a hospital-patient relationship. See Lyons v. Grether, 239 S.E.2d 103, 105 (Va. 1977). Such a relationship cannot arise unless the patient "entrust[s] his treatment to the" hospital. Id.

CHF first argues that the district court incorrectly determined that the evidence was insufficient to support a finding by a reasonable jury that Potomac owed a duty of care to Helmann. We disagree. See Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249-50 (4th Cir. 1996) (stating that we review the grant of judgment as a matter of law de novo to determine whether the evidence presented at trial, viewed in the light most favorable to the nonmovant, supports the jury finding

3

on the issue in question). The only reasonable inference from the evidence presented was that prior to consenting to treatment by Potomac, Helmann attempted to ensure that CHF would cover the cost and that Helmann left Potomac upon learning that CHF would not pay for any treatment he received there. Accordingly, Potomac had no duty to treat Helmann, and the district court correctly granted Potomac's motion for judgment as a matter of law.**2**

III.

In sum, we affirm the grant of judgment as a matter of law.

<u>AFFIRMED</u>

_____

**2** Because we conclude that the district court correctly granted Potomac's motion for judgment as a matter of law on the basis that no hospital-patient relationship was ever formed, we need not address the alternative grounds offered by the district court for its decision.

4