Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Lemons, JJ., and Whiting, S.J.

FLORENCE A. PROSISE, ADMINISTRATOR
OF THE ESTATE OF CRYSTAL NICOLE PROSISE,
DECEASED

v.  Record No. 001074     OPINION BY JUSTICE ELIZABETH B. LACY
                                       April 20, 2001
ROBIN FOSTER, M.D., ET AL.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

The issue in this case is whether an on-call attending physician for a teaching hospital owed a duty of care to a patient based upon a physician-patient relationship in the absence of direct contact with or consultation concerning the patient.

Dr. Robin L. Foster was the attending physician for the Medical College of Virginia Hospitals Pediatric Emergency Room (MCVPER) from noon on March 27 through 8:00 a.m. on March 28, 1994.  She was physically present at the MCVPER until 5:00 p.m., March 27, and was "on call" from then until 8:00 a.m. on March 28.  As an on-call attending physician, Dr. Foster was not physically present in the emergency room, but she was available to answer any questions from the treating residents and interns.

Florence A. Prosise took her four-year-old daughter, Crystal, to the MCVPER in the early evening of March 27, 1994. Crystal had chicken pox lesions in her mouth, was lethargic,

and was not eating or drinking.  The first physician to see Crystal in the emergency room was Dr. Omprakash V. Narang, a first-year resident.  Prosise told Dr. Narang that Crystal had been treated for asthma with intravenous corticosteroids as an inpatient at another hospital from March 16 to March 18, 1994. Dr. Narang consulted Dr. Valerie Curry, a third-year resident, regarding Crystal's condition and prior treatment.  Dr. Curry examined Crystal but did not read Crystal's chart or otherwise learn that Crystal had been treated with corticosteroids. Neither Dr. Curry nor Dr. Narang called Dr. Foster regarding Crystal's condition or treatment.  Crystal was treated for dehydration and released early the next morning, March 28, 1994, with instructions to see her pediatrician the next day.

When Prosise took Crystal to her pediatrician on March 29, Crystal was immediately transported back to the MCVPER because of a grave respiratory condition.  At the MCVPER, Crystal was seen for the first time by Dr. Foster.  Dr. Foster concluded that Crystal was suffering from "Varicella Infection S/P immunosuppresion asthma R/O Pneumonitis," a condition in which the chicken pox virus affects the body's entire system rather than just the skin.  Dr. Foster placed Crystal on an anti-viral medication administered intravenously.  The treatment was unsuccessful, and Crystal died as a result of the infection on April 22, 1994.

Prosise, as administrator of the estate of Crystal Nicole Prosise, filed a medical malpractice and wrongful death action against Dr. Foster and MCV Associated Physicians.[1] Prosise alleged that Dr. Foster, as the on-call attending physician for the MCVPER on March 27 and 28, 1994, had a duty to supervise and was responsible for the medical care rendered by the residents working at the MCVPER during that time. The motion for judgment claimed that Dr. Foster and her alleged employer, MCV Associated Physicians, were "vicariously liable and legally responsible for the acts and omissions of, and negligence of" Dr. Narang and Dr. Curry, which resulted in the death of Crystal.

Dr. Foster and MCV Associated Physicians filed a motion for summary judgment asserting that there was no physician-patient relationship between Crystal and the defendants, and, "therefore, the defendants owed no duty of care to" Crystal. The parties agreed that the trial court could consider discovery depositions in addressing the summary judgment motion.[2] See Code § 8.01-420; Rule 3:18. Following oral

---

[1] Prosise's original motion for judgment included claims against a number of other defendants. Following resolution of her claims against those defendants, Prosise nonsuited her claims against Dr. Foster and MCV Associated Physicians. Prosise refiled the nonsuited claims November 10, 1997.

[2] The trial court granted the defendants' motion to include the discovery conducted in the prior nonsuited action in the instant action.

3

argument, the trial court entered judgment in favor of Dr. Foster and MCV Associated Physicians, finding that there was no "minimum contact" between Dr. Foster and Crystal and, therefore, no physician-patient relationship existed.  We awarded Prosise an appeal from this judgment.

Prosise argues that Lyons v. Grether, 218 Va. 630, 239 S.E.2d 103 (1977), Lee v. Bourgeois, 252 Va. 328, 477 S.E.2d 495 (1996), and Code § 54.1-2961 require a finding that a physician-patient relationship existed between Dr. Foster and Crystal on March 27 and 28, 1994.  As defined in Lyons, the physician-patient relationship is a consensual relationship that exists if a patient entrusts his or her treatment to the physician and the physician accepts the case.  218 Va. at 633, 239 S.E.2d at 105.  Citing Lee and Code § 54.1-2961, Prosise argues that a physician-patient relationship existed in the instant case because, when Dr. Foster agreed to be the MCVPER's attending physician from noon on March 27, 1994 until 8:00 a.m. on March 28, 1994, she accepted Crystal as her patient.  We disagree with Prosise's interpretation of Lee and Code § 54.1-2961.

In Lee, an attending physician in a state university hospital was sued for medical malpractice in the treatment rendered to a patient by residents in the hospital.  The issue in the case was whether the attending physician was entitled

4

to sovereign immunity.  We concluded that under the circumstances presented, teaching was not the primary function of the attending physician.  Rather, the attending physician's primary function was directly related to assuring the proper care of the patient, regardless of whether the care was delivered by the attending physician or through the residents. 252 Va. at 334, 477 S.E.2d at 498-99.  This patient care function involved only a slight degree of state interest and involvement, and, therefore, under the standards of James v. Jane, 221 Va. 43, 282 S.E.2d 864 (1980), the attending physician was not entitled to sovereign immunity.  Lee, 252 Va. at 335, 477 S.E.2d at 499.

The liability of an attending physician at a teaching hospital was not at issue in Lee.  Thus, we did not consider in Lee whether a duty of care existed between the attending physician and the patient, and, therefore, that case is not applicable to the issue presented here.  See also Benjamin v. Univ. Internal Med. Found., 254 Va. 400, 404 n.3, 492 S.E.2d 651, 653 n.3 (1997) (declining to address arguments concerning the existence of a physician-patient relationship).

We also reject Prosise's suggestion that Code § 54.1-2961(B) imposes a duty of care on an on-call attending physician in a teaching hospital because the statute requires that interns and residents "be responsible and accountable at

5

all times to a licensed member" of the hospital staff. Although we discussed that statutory provision in Lee with regard to the question of sovereign immunity, 252 Va. at 334, 477 S.E.2d at 498-99, we did not consider whether its requirements imposed a duty of care. We engage in that analysis now.

Code § 54.1-2961 is found within a series of provisions defining conditions under which medical students, interns, and residents may work in or be employed by a hospital. Medical students may work in hospitals only under the "direct tutorial supervision of a licensed physician who holds an appointment on the faculty" of a medical school. Code § 54.1-2959. Third and fourth year medical students may be employed by hospitals to perform certain examinations and to take medical histories, but the attending physician retains the responsibility to assure "that a licensed physician [completes] a history and physical examination on each hospitalized patient." Code § 54.1-2960. Finally, interns and residents employed by hospitals while part of an approved internship or residency program are "responsible and accountable" to licensed staff members but are not subject to further restrictions under Code § 54.1-2961(B).

We cannot conclude that the General Assembly, in merely listing the conditions under which medical students, interns,

6

and residents may work in a hospital during the course of their educational programs, intended to create a statutory physician-patient relationship between an on-call attending physician in a teaching hospital and a patient that would give rise to a duty of care.  Thus, we reject Prosise's argument that, under Lee and Code § 54.1-2961, a physician-patient relationship existed between Dr. Foster and Crystal because Dr. Foster, as the on-call attending physician, "accepted" Crystal as a patient when she came to the MCVPER the evening of March 27, 1994.

Finally, Prosise urges us to follow the North Carolina Supreme Court and impose a common law duty on Dr. Foster, arguing that such duty is necessary to ensure appropriate supervision of residents and interns by attending physicians. In Mozingo v. Pitt County Memorial Hospital, Inc., 415 S.E.2d 341 (N.C. 1992), the North Carolina Supreme Court held that an on-call attending physician had a common law duty to supervise residents who provided medical care to patients, even though the relationship "did not fit traditional notions of the doctor-patient relationship," because of the "increasingly complex modern delivery of health care."  Id. at 344-45.

Dr. Foster and MCV Associated Physicians ask us to reject the rationale of Mozingo, as they assert that the Maryland Court of Special Appeals did in Rivera v. Prince George's

7

County Health Dept., 649 A.2d 1212 (Md. Ct. Spec. App. 1994), cert. denied, 656 A.2d 772 (Md. 1995). The Maryland court stated that it would impose no duty on an on-call attending physician in the absence of proof that the doctor had accepted the patient, had consulted with a physician about the patient, or had been summoned for consultation or treatment, "unless the 'on call' agreement between a hospital and a physician provides otherwise." Id. at 1232. Thus, although the court acknowledged that direct treatment of a patient was not necessary to give rise to a duty of care, the court required that the evidence show that an on-call attending physician in a teaching hospital accepted responsibility for the patient's treatment in some way. We agree with the Maryland court's analysis in Rivera and note that it applied virtually the same standard we enunciated in Lyons as the basis for a physician-patient relationship. 218 Va. at 633, 239 S.E.2d at 105.

Accordingly, to resolve this case, we look to the record to determine whether it contains any facts which indicate that Dr. Foster, by virtue of her actions or her status as the on-call attending physician for the MCVPER, agreed to accept responsibility for the care of Crystal. Clearly, Dr. Foster's direct actions do not indicate that she accepted Crystal as a patient prior to March 29. She did not treat Crystal, she did not participate in any treatment decisions regarding Crystal,

8

and she was not consulted by Dr. Curry, Dr. Narang, or any other hospital staff regarding Crystal's condition.

Similarly, the record in this case does not support a finding that, by agreeing to act as an on-call attending physician in a teaching hospital, Dr. Foster accepted responsibility for Crystal's care. The record contains no information about the duties of attending physicians, whether on-call or otherwise, and there is no evidence of the hospital's policy regarding attending physicians.[3] Cf., e.g., Lee v. Bourgeois, 252 Va. at 333, 477 S.E.2d at 498 (hospital policy that all patients be assigned an attending physician). The only evidence the record contains in this regard are statements from Dr. Curry that she assumed attending physicians had to review all patient charts and from Dr. Narang that he understood attending physicians were "ultimately responsible." Furthermore, Dr. Foster's employment contract, which is in the record, makes no reference to her duties as an attending physician. Thus, on this record, there is no basis to support a finding that Dr. Foster, directly, by contract, or by hospital policy, assumed responsibility for the care of Crystal.

---

[3] Although Prosise did file a motion to compel the answer to an interrogatory that inquired into the duties and responsibilities of attending physicians, her motion was overruled and she did not assign error to that ruling.

Accordingly, for the above reasons, we conclude that the trial court did not err in holding that there was no physician-patient relationship between Dr. Foster and Crystal because the evidence failed to show a consensual relationship in which the patient's care was entrusted to the physician and the physician accepted the case.  Lyons, 218 Va. at 633, 239 S.E.2d at 105.

The judgment of the trial court will be affirmed.

Affirmed.